IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADALBERTO LOPEZ-MONTIEL,   )<br>  )<br>Plaintiff,   )<br>  )<br>v.   )<br>  )<br>MICHAEL J. ASTRUE,   )<br>Commissioner of Social Security,   )<br>  )<br>Defendant.   ) | Case No. 11 C 6497<br><br>Magistrate Judge Sidney I. Schenkier |

## MEMORANDUM OPINION AND ORDER

On September 16, 2011, Adalberto Lopez-Montiel ("Lopez-Montiel") filed this suit seeking judicial review of the decision of the Commissioner of Social Security ("the Commissioner") to deny his application for a period of disability and disability insurance benefits. The parties consented to have Magistrate Judge Martin Ashman conduct any and all proceedings in this case, including entry of final judgment (doc. # 7). The Commissioner then filed an answer on November 15, 2011, and Mr. Lopez-Montiel subsequently filed a motion for summary judgment (doc. # 17). In lieu of a response, the Commissioner filed the instant motion to reverse and remand the Administrative Law Judge's ("ALJ") decision for further administrative proceedings (doc. # 22). On June 12, 2012, as a result of the death of Judge Ashman, the case was reassigned to us – without objection – for all further proceedings (doc. # 26). The plaintiff has objected to the Commissioner's motion, and argues that the Court should order an award of benefits or, in the alternative, limit the scope of the remand (doc. # 25). After carefully considering the parties' arguments, we find that the Commissioner's motion should be granted and plaintiff's objections overruled.

**I.**

In her written opinion, the ALJ followed the familiar five-step analysis in cases of this type to determine at Step 1 that Mr. Lopez-Montiel, who communicates only in Spanish, had not engaged in substantial gainful activity from his onset date of February 8, 2002 through his last insured date of December 31, 2007 (R. 21). At Step 2, the ALJ found that plaintiff suffers from the severe impairments of obesity and thrombocytopenia, a blood platelet disorder that can result in excessive bleeding and bruising. *See* 18 The Merck Manual 1064-67 (2006). At Step 3, the ALJ found that these impairments did not meet or medically equal a listed impairment, either individually or in combination (R. 22). The ALJ determined that Mr. Lopez-Montiel had the residual functional capacity ("RFC") to perform work at the medium level, though he was restricted to jobs (1) that do not involve exposure to heights, hazards, or sharp objects, and (2) that he could learn by demonstration only (R. 22). Mr. Lopez-Montiel testified briefly at the hearing through an interpreter, but the ALJ found that his statements concerning the extent of his limitations were not credible (R. 24). In arriving at the RFC, the ALJ did not weigh any treating or non-treating medical source and did not consider medical records that were in Spanish as part of the RFC determination.

Based on this RFC, the ALJ determined at Step 4 that Mr. Lopez-Montiel could not perform his past relevant work as a freezer operator. The vocational expert ("VE") present at the hearing testified that this past work was classified as light and skilled under the Dictionary of Occupational Titles ("DOT"), but that it should be viewed as heavy as performed by Mr. Lopez-Montiel (R. 45-46). In light of the nonexertional limitations included in the RFC, the ALJ did not rely on the Medical-Vocational Guidelines ("grids"). Instead, she consulted the VE on whether jobs were available that Mr. Lopez-Montiel could perform. The VE identified the positions of an assembler

and housekeeper, each of which involves light work. The ALJ adopted the VE's conclusion that a person with Mr. Lopez-Montiel's RFC could perform these jobs to determine that Mr. Lopez-Montiel was "not disabled" (R. 25).

## II.

Sentence four of 42 U.S.C. § 405(g) authorizes remand when the court modifies or reverses the Commissioner's final decision. *Richmond v. Chater*, 94 F.3d 263, 268 (7th Cir. 1996). A sentence four remand is justified when the ALJ's decision is not supported by substantial evidence, unless the record compels the court to award benefits to the plaintiff. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits requires that all fact issues have been resolved and that the record before the court "can yield but one supportable conclusion." *Id.* (citation omitted).[1]

Both the Commissioner and Mr. Lopez-Montiel concur that the ALJ's determination cannot stand based on the current record. Mr. Lopez-Montiel's summary judgment motion claims that the ALJ's decision should be reversed and remanded under sentence four of Section 405(g) because the ALJ failed to: (1) properly assess his credibility; (2) adequately consider his obesity; (3) translate the Spanish medical records into English; (4) cite sufficient evidence supporting the RFC assessment; and, (5) show that a significant number of jobs exist in the national economy that Mr. Lopez-Montiel could perform.

---

[1] District courts can also remand a final decision by the Commissioner under sentence six of § 405(g). *Shalala v. Schaefer*, 509 U.S. 292, 296 (1993). A sentence six remand is possible when the Commissioner requests it before filing an answer, or when material evidence that was not submitted during the administrative proceedings is presented for the first time to the court. *Id.* at 297 n.2. Neither of these conditions applies in this case.

The Commissioner does not address the credibility or obesity issues, but his sparse motion is not at odds with most of Mr. Lopez-Montiel's claims. In particular, the Commissioner notes several evidentiary failings in the ALJ's decision that should be remedied. These include asking us to instruct the ALJ on remand to: (1) update the treatment evidence through the last date insured and have all Spanish medical records translated; (2) evaluate and weigh all medical opinions; and (3) obtain additional evidence from the VE. The Commissioner provides no discussion of why such evidence is necessary, but certainly a more complete record will allow the ALJ to address Mr. Lopez-Montiel's RFC more fully and to determine with greater clarity the impact any nonexertional limitations have on his occupational base.

The Commissioner asks us to remand the ALJ's decision under sentence four on these grounds before considering the merits of the summary judgment motion. Mr. Lopez-Montiel disagrees, and argues that a sentence four remand is only appropriate if it includes an instruction for an award of benefits. Mr. Lopez-Montiel claims that the only possible conclusion at Step 5 is that he is disabled and that no further administrative proceedings are necessary. The ALJ found that Mr. Lopez-Montiel was not disabled because he could perform two jobs identified by the VE (R. 25). Mr. Lopez-Montiel claims that because these jobs involved light work, not the medium work identified in the RFC, the ALJ was required to rely on Rule 202.09 of the grids to find him disabled. Rule 202.09 states that a claimant of Mr. Lopez-Montiel's age, who is unable to communicate in English and can only perform light, unskilled work, is disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 2, Rule 202.09.[2]

---

[2] Mr. Lopez-Montiel also claims that the ALJ erred by relying on Rules 203.19 and 203.26 of the grids, which apply when a claimant can perform medium work. The ALJ stated that if Mr. Lopez-Montiel could perform the full range of medium work, these Rules would require a finding of "not disabled" (R. 25). However, the ALJ also made clear

4

We reject this argument. Instead of being required to rely exclusively on Rule 202.09, as Mr. Lopez-Montiel claims, the ALJ would have erred had she done so. The grids only take account of *exertional* limitations and do not address a claimant's nonexertional impairments. Here, the ALJ found that the job base available to Mr. Lopez-Montiel could be eroded by his nonexertional inability to work around hazards, heights, or sharp objects, as well as by the requirement that he learn by demonstration only (R. 25). The grids do not apply when that is the case, and an ALJ is required to turn to the VE for testimony on available jobs. *Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005) ("Where a nonexertional limitation might substantially reduce the range of work an individual can perform, use of the grids is inappropriate and the ALJ must consult a VE"). The ALJ did so in this case – although, as we discuss below, in a way that independently was problematic. The ALJ was not required to rely on the grids to reach a finding of "disabled," and Mr. Lopez-Montiel is not entitled to an award of benefits on that ground.

### III.

Mr. Lopez-Montiel argues in the alternative that the Commissioner's motion should be denied because by obtaining a remand without ruling on the summary judgment motion, the Commissioner would be allowed to ignore the merits of the motion. As plaintiff notes, remand motions such as those filed by the Commissioner here are frequently denied when a claimant has already filed a dispositive motion. *See Gaspari v. Astrue*, No. 06 C 5292, at doc. 35 (N.D. Ill. April 30, 2007) (Keys, M.J.); *Baird v. Astrue*, No. 09 C 5764, at doc. 19 (N.D. Ill. June 9, 2010) (Cox, M.J.). These cases have found that when a sentence six remand is unavailable, and even when remand seems inevitable, it is more judicially economical to consider the merits of a claimant's case

---

that she did *not* rely on them to reach her finding because of Mr. Lopez-Montiel's nonexertional limitations (R. 25).

5

before remanding to the ALJ. But, this approach has not been universally adopted. *See Marmolejo v. Astrue*, No. 11 C 1844, 2012 WL 1598065 (N.D. Ill. May 7, 2012) (Ashman, M.J.) (remanding, without reaching the merits, after a motion for summary judgment was filed).

We agree with *Gaspari* and *Baird* that in some instances, it may be more efficient to consider a claimant's dispositive motion before remanding a case for further consideration. In this case, however, it is already clear that the ALJ failed to consider a significant portion of the record. The record contains 166 pages of Spanish-language documents, and both Mr. Lopez-Montiel and the Commissioner agree that the ALJ erred by not having the Spanish-language records translated so that she could consider them as part of her findings. The ALJ noted that "some" Spanish-language medical records existed, but she concluded that most of them related to a February 2002 hospitalization in Mexico "which is not in dispute" (R. 24).

That reasoning was seriously flawed. The fact that the parties did not dispute that Mr. Lopez-Montiel was hospitalized does not mean that the contents of the untranslated records are irrelevant to the ALJ's consideration. Indeed, many of these documents are not hospital records; the Spanish-language records include laboratory results from September 2002, hematology reports from March 2002, and progress notes from Mr. Lopez-Montiel's hematologist in Mexico (R. 571, 576, 577, 580). It is not for us to determine in the first instance what relevance these records might have to the ALJ's evaluation of Mr. Lopez-Montiel's condition. *See Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). The ALJ has an independent duty "to develop a full and fair record," *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009), and we see no judicial economy to be achieved by ruling on the basis of a record that all parties agree is incomplete. If Mr. Lopez-Montiel disagrees with the ALJ's decision on remand, he will be able to seek judicial review of it at a later time.

## IV.

Finally, Mr. Lopez-Montiel contends that if this case is remanded, we should instruct the ALJ not to reconsider certain aspects of her decision, particularly the current RFC. Again, this argument essentially asks us to order the ALJ to reach predetermined results without knowing what a complete record will include. We have no way of predicting what the updated medical evidence will reveal or what the untranslated Spanish records contain. As a result, it would not be appropriate to restrict the ALJ from reconsidering portions of the existing decision based on new evidence that will be developed on remand. ALJs are experts in making disability determinations, and we are confident that the ALJ in this case will give proper consideration to any part of the five-step analysis that is affected by the remand order.

That said, we caution the ALJ that on remand, she must articulate the basis of her Step 5 reasoning with greater clarity and build a logical bridge between the VE's testimony and the ALJ's conclusions concerning Mr. Lopez-Montiel's ability to work at his RFC level. As it stands, the ALJ found that Mr. Lopez-Montiel has the RFC to perform medium work, with the nonexertional limitations noted earlier. But, the VE testified that no jobs were available for such a person (R. 46). The ALJ then asked the VE if jobs would be available at the light level, and the VE identified the positions of housekeeper and assembler (R. 46-47).

One problem with this testimony is that the ALJ is not clear whether the VE had in mind Mr. Lopez-Montiel's nonexertional limitations when answering the question about jobs at the light level. A hypothetical question to a VE must include "all limitations supported by medical evidence in the record." *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). An exception exists when the VE independently learns of a claimant's limitations at the hearing and accounts for them. *Id.* The VE

7

in this case clearly knew of the limitations that were part of Mr. Lopez-Montiel's RFC because the ALJ included them in her initial question about work at the medium level. Thus, it is possible that the VE accounted for them – without expressly saying so – when identifying the jobs of housekeeper and assembler.

Nevertheless, the record strongly suggests that the VE did not do so. For example, the VE identified the assembler position as one described under DOT 780.684-062 (R. 47). The DOT states that this type of assembler "cuts around measurement or pattern outline, using [an] electric knife or bandsaw." DOT 780.684-062. It is difficult to square the use of knives and saws with the fact that Mr. Lopez-Montiel's blood platelet disorder prevents him from working with sharp objects, which the ALJ included in Mr. Lopez-Montiel's RFC. Neither the VE in her testimony, nor the ALJ in her opinion, discussed this apparent inconsistency. If the ALJ believed that Mr. Lopez-Montiel's nonexertional limitations did not apply to light work, she was required to explain why that is the case. If she concluded that they did apply, then she was required to explain why Mr. Lopez-Montiel could perform a job requiring him to use sharp objects. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that the ALJ must "sufficiently articulate his assessment of the evidence to assure us that [he] considered the important evidence . . . [and to enable] us to trace the path of the ALJ's reasoning") (internal quote and citation omitted).

## **CONCLUSION**

As a result, the Commissioner's motion for reversal with remand (doc. # 22) is granted; we strike plaintiff's pending motion for summary judgment (doc. # 17) as moot. This case is hereby remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ is instructed to: (1) update the treatment evidence on Mr. Lopez-Montiel's medical condition through his last insured

date; (2) translate all medical records that are currently in the Spanish language; (3) evaluate the treating, examining, and non-examining medical source opinions in the record and explain the reasons for the weight given to their evidence; (4) further consider Mr. Lopez-Montiel's RFC based on the updated record and explain the basis for it; (5) secure supplemental evidence from the VE on the jobs available to a person with Mr. Lopez-Montiel's RFC and expressly include all nonexertional limitations in any hypothetical question posed to the VE; and (6) explain the effect, if any, that Mr. Lopez-Montiel's limitations have on his occupational base. The case is terminated.

**ENTER:**

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

**Dated: September 19, 2012**